UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:05CV114-R

BRENT MCDOWELL and JIM TRUMAN                                              PLAINTIFFS

v.

CITY OF PRINCETON, KENTUCKY                                                 DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Motion for Summary Judgment of Defendant City of Princeton, Kentucky (Dkt. # 30). Plaintiffs Brent McDowell and Jim Truman responded (Dkt. # 33), Defendant replied (Dkt. # 45), and this matter is now ripe for decision. For the reasons set forth below, Defendant's motion will be **DENIED**.

## BACKGROUND

Plaintiffs Brent McDowell and Jim Truman were each employed by the City of Princeton's police department as canine officers; that is, officers who utilized dogs in their work, either for narcotics detection or for tracking. Both McDowell and Truman owned the dogs with which they worked, and the dogs lived at their homes. Both entered into lease agreements with the City of Princeton, pursuant to which their canines provided services to the city's police department. In the spring of 2005, the City of Princeton terminated both lease agreements. McDowell and Truman assert that they spent significant portions of their off-duty time caring for and training the dogs, and now seek compensation for (i) overtime pay for the three-year period immediately prior to the termination of their respective leases, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207 *et seq.* ("FLSA"); and (ii) overtime pay for the five-year period

1

immediately prior to the termination of their respective leases, pursuant to KRS §337.285, part of Kentucky's Wages and Hours statute. The city of Princeton seeks summary judgment on the grounds that: (i) the time spent caring for the canines is not compensable under the FLSA; (ii) the applicable statute of limitations bars Truman's claim; and (iii) the lease agreements pursuant to which the canine services were provided are binding on the parties and bar recovery under these theories.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary

judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

**Applicability of the FLSA**

Claims for overtime compensation under the FLSA typically turn on both questions of law and of fact. *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 521 (2d Cir. 1998) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986), *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 743, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *Freeman v. National Broad. Co., Inc.*, 80 F.3d 78, 82 (2d Cir.1996)). *Holzapfel* concerned a claim - similar to those here - of a canine officer seeking overtime compensation for time spent caring for the dog, Bandit, assigned to him. Section 207(a) of the FLSA makes it illegal to employ a person "for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." The plaintiff in *Holzapfel* "was told that he would be paid for only two overtime hours per week, [although] he was never directed to limit his off-duty activites to those two hours for which he was compensated." 145 F.3d 516, 520. Plaintiff claimed his actual overtime spent constituted 44-45 off-duty hours per week. *Id.* On appeal from a jury verdict for the defendants, the Second Circuit held:

> [T]he trial judge was responsible for determining as a matter of law whether plaintiff's activities could potentially constitute "work." The jury was to decide as a question of fact, not only how much of plaintiff's time spent with Bandit fell within the court's definition of "work" and would be compensable, but also how

3

> much of that time was spent with the employer's actual or constructive knowledge. If the time plaintiff spent working amounted to more than the two hours per week for which plaintiff was compensated, the district court was then to apply the overtime provisions of the FLSA.

*Id.* at 521-22.  The *Holzapfel* court then went on to discuss the legal definition of the term "work" as used in the FLSA context.  It noted that the Supreme Court had defined "work" as "'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id.* at 522 (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).  It noted that such exertion needed not occur during scheduled work hours, and affirmed the district court's holding that "a K-9 officer must be compensated for the off-duty time that he spends performing the tasks involved in caring for and training his assigned police dog, unless the time devoted to a particular task is *de minimis*." *Id.* (also citing *Reich v. New York City Transit Auth.*, 45 F.3d 646, 651 (2d Cir.1995) (holding that "walking, feeding, training, grooming and cleaning up are integral and indispensable parts of the handler's principal activities and are compensable as work.").  A number of other jurisdictions which have addressed the issue are in general accord.  *See, e.g., DeBraska v. City of Milwaukee*, 11 F. Supp.2d 1020, 1033 (E.D. Wis. 1998), aff'd in part, remanded in part on other grounds, 189 F.3d 650 (7th Cir. 1999); *Rudolph v. Metropolitan Airports Comm'n*, 103 F.3d 677, 681 (8th Cir. 1996); *Jerzak v. City of South Bend*, 996 F. Supp, 840, 846 (N.D. Ind. 1998); *Andrews v. DuBois*, 888 F. Supp. 213, 216-217 (D. Mass. 1995); *Levering v. District of Columbia*, 869 F. Supp. 24, 26-27 (D.D.C. 1994); *Truslow v. Spotsylvania County Sheriff*, 783 F. Supp. 274, 277-78 (E.D. Va. 1992).

Defendant argues, however, that these cases are distinguishable in that they concern canines that were owned by the municipalities in question and were *assigned* to the canine officers, rather than being owned by the canine officers and leased to the city, as McDowell's and Truman's dogs were.  Defendant argues that the significance of this distinction is that, because Plaintiffs owned the dogs and therefore retained their pecuniary interest in them, the time spent caring for them does not "necessarily and primarily" benefit the employer, and therefore cannot constitute compensable work as that term is defined in *Tennessee Coal*.  321 U.S. at 598.  Therefore, Defendants argue, no recovery is possible under the FLSA for time spent caring for the dogs.  Although the Court agrees that the Plaintiffs' retained interest in the ownership of their dogs does impact the FLSA analysis, the Court disagrees that it removes all of Plaintiffs' off-duty dog-care time entirely from the realm of compensable work.  The *Holzapfel* court faced an analogous issue of whether *all* of the time spent by the plaintiff in that case caring for the dog was compensable.  In that case, the court noted a concern that "[a]t some point, an officer's attention to his assigned dog may not be provided primarily for the employer's benefit but rather out of the caretaker's own sense of love and devotion to the animal in his charge."  145 F.3d 516, 523-24.  This time, the court said, would not be compensable under the FLSA.  *Id.* The question of what portion of proven dog-care time was of benefit to the employer and what portion was spent "on account of personal devotion to the dog" was a question of fact for the jury.  *Id.*  This approach was endorsed by the Sixth Circuit in *Brock v. City of Cincinnati*, 236 F.3d 793, 802-03 (6th Cir. 2001).

   The Court believes that a similar test should apply where the handler's interest is a pecuniary, rather than emotional, one.  Further, the same approach applies to Plaintiffs' claims

that they are entitled to overtime for uncompensated training time and that they expended more than ordinary cleaning time on their city-owned vehicles as a result of the vehicles' being used to transport their canines.  The jury will have to determine what amount of extra time, if any, spent by the Plaintiffs was necessarily and primarily for the benefit of the employer as distinguished from time spent on care primarily for the benefit of the Plaintiffs or persons other than the City, or simply out of a sense of love and devotion to the animals.  These are issues of fact for the jury to determine.

**Statute of Limitations**

Defendant argues that, as to Plaintiff Truman, his FLSA claims fall outside of the statute of limitations imposed in the statute.  The FLSA, as amended by the Portal-to-Portal Act of 1947, contains "a significant distinction between ordinary violations and willful violations" for statute of limitations purposes: for an ordinary violation, the limitations period is two years, and for a willful one it is three years.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 131-32, 108 S.Ct. 1677, 1680-81, 100 L.Ed.2d 115 (1988).  A willful violation requires "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).  Defendant argues that Truman's claims are barred by the two-year statute of limitations because he was promoted from canine officer to detective in January of 2003, more than two years before he filed the instant suit.  This raises two questions: does the promotion foreclose liability under the FLSA, and did the City's failure to pay overtime constitute a willful violation?

The evidence in the record, including deposition testimony and documents, indicates that

there are material factual issues with regard to each question.  Truman's promotion does not *per se* foreclose recovery under the FLSA, since the evidence indicates that there is at least a factual issue with respect to the question of whether use of the canine continued to be part of Truman's job after he was promoted.  The record indicates that the lease agreement between Truman and the City continued to be in effect through 2005, and some deposition testimony alleges that there were instances in which Truman actually used his canine during that time.

As to the issue of whether the City's failure to pay overtime was willful, material issues of fact exist as well.  Plaintiff Truman's deposition testimony indicates that he raised the issue of overtime pay with the City in 2001, and several times thereafter.  (Dkt. # 34, at 37).  The record also indicates that several city officials received training on the issue of compliance with wage and hour law compliance. (Dkt. # 41, at 75, and # 42, at 12-13).  This evidence presents a material issue of fact for the jury.

**Effect of the Lease Agreements**

The City further argues that the Lease Agreements control the relationship between the parties and preclude recovery.  Each of the agreements in question contain the following language: "[Plaintiff] shall receive no additional personal compensation for providing the canine services pursuant to this Agreement."  (Exhibit E to McDowell Deposition, Dkt. # 23, and Attachment # 1 to Dkt. # 34).  Defendant argues that the agreements "should be controlling." (Reply, Dkt. # 45, at 5).  Indeed, the Sixth Circuit has expressed a preference for enforcing a reasonable agreement: "[W]hen 'work' itself might be a personal pursuit, resolving whether particular efforts were expended necessarily and primarily for the benefit of the employer proves so unrealistic that courts should not only accept and enforce reasonable agreements, but should

encourage them." *Brock*, 236 F.3d 793, 805.  The *Brock* court also said: "Because of the difficulty in determining the exact hours worked in circumstances where unsupervised employees can divide their time between 'work' and personal pursuits, 'any reasonable agreement of the parties which takes into account all of the pertinent facts will be accepted.'" *Id.*, quoting 29 C.F.R. § 785.23.

The language in the agreement is so general that it is unclear what kind of compensation it refers to.  Plaintiffs assert that "additional personal compensation" meant that they "would not receive any additional increase to their hourly rate as additional wages, but would continue to receive the same hourly rate of wages even though they would be providing the City with police canine services after being assigned as canine officers pursuant to the agreements."  (Response, Dkt. # 33, at 31).  The language is ambiguous, in light of the agreements' use of the term "personal compensation" without providing a definition thereof.  It could reasonably be interpreted to mean that Plaintiffs would not receive compensation over and above the compensation they received as part of their salary; however, overtime is a part of their compensation.  The Court cannot say as a matter of law that "additional personal compensation" refers to overtime worked, even applying a presumption in favor of enforcing the parties' agreement.  Therefore, the jury must determine what effect, if any, the agreements had on the overtime arrangements between the City and the Plaintiffs.

**KRS 337.285**

Although Defendant's motion seeks summary judgment on Plaintiffs' claims arising under Kentucky law, it makes no argument with respect thereto.  KRS 337.285(1) provides:

> No employer shall employ any of his employees for a work week longer than
> forty (40) hours, unless such employee receives compensation for his employment

> in excess of forty (40) hours in a work week at a rate of not less than one and
> one-half (1-1/2) times the hourly wage rate at which he is employed.

Without an argument with respect to Kentucky law on the subject of whether the dog care in question constitutes "employment" under the statute, summary judgment is inappropriate at this time.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment will be **DENIED**. An appropriate order shall issue.